**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| SOLANGE FAKTOR,<br><br>                  Plaintiff,<br><br>       v.<br><br>UNITED STATES,<br><br>                  Defendant. | No. 1:20-cv-263 (CKK) |

**MEMORANDUM OPINION**
(March 4, 2021)

Plaintiff Solange Faktor brings this lawsuit under the Federal Tort Claims Act ("FTCA"), alleging that the U.S. Department of State erroneously denied her claim for compensation under the Agreement between the United States and France on Compensation of Certain Victims of Holocaust-Related Deportations *See* Compl., ECF No. 1. Before the Court is the United States' [15] Motion to Dismiss, in which the United States argues that the Court lacks subject matter jurisdiction because Plaintiff has failed to demonstrate that a private party could be held liable based on her allegations, and therefore Plaintiff has failed to show that the FTCA's limited waiver of sovereign immunity applies to her claim. Upon its review of the pleadings,[1] the relevant legal authority, and the record as a whole, the Court concludes that it lacks subject matter jurisdiction to consider Plaintiff's FTCA claim. Accordingly, the Court GRANTS Defendant's Motion to Dismiss.

---

[1] The Court's consideration has focused on:
- Defendant's Motion to Dismiss Plaintiff's Complaint ("Def.'s Mot."), ECF No. 15;
- Plaintiff's Opposition to Defendant's Motion to Dismiss the Complaint ("Pl.'s Opp'n"), ECF No. 17;
- Defendant's Reply in Support of Motion to Dismiss ("Def.'s Reply"), ECF No. 19; and
- Plaintiff's Surreply in Opposition to Defendant's Motion to Dismiss the Complaint ("Pl.'s Surreply"), ECF No. 25.

## I.   BACKGROUND

### A.  Agreement between the United States and France to Compensate Victims of Holocaust-Related Deportations

In 2014, the United States and France executed an "Agreement for Compensation on Certain Victims of Holocaust-Related Deportations from France Who Are not Covered by French Programs."[2] *See* Def.'s Mot. Ex. A ("Agreement"). The Agreement was established to provide "an exclusive mechanism for compensating persons who survived deportation from France [during World War II], their surviving spouses, or their assigns." Agreement § 2(1).

Pursuant to the Agreement, the French government transferred $60 million to the United States to create a fund for Holocaust deportation claims ("Fund"). *Id.* § 4(1). The United States has the "sole discretion" to administer the Fund, "according to criteria which it shall determine unilaterally" and "for which it shall be solely responsible." *Id.* § 6(1). The Agreement, however, carves out four categories of claimants who are ineligible to receive payments from the Fund for Holocaust deportation claims: (1) French nationals; (2) nationals of other countries who "have received or are eligible to receive" compensation under another international agreement made by France addressing Holocaust deportation claims; (3) persons who "have received or are eligible to receive" compensation under France's reparation measure for orphans whose parents died in deportation; and (4) persons who have received compensation under "another State's program providing compensation specifically for Holocaust deportation." *Id.* §§ 3(1)-(4), 6(2)(b). The

---

[2] The Complaint "specifically references" the Agreement, which is "central" to Plaintiff's claim, so the Court shall consider it without converting Defendant's motion into one for summary judgment. *See Banneker Ventures, LLC v. Graham*, 798 F.3d 1119, 1133 (D.C. Cir. 2015); *Vanover  v. Hantman,* 77 F. Supp. 2d 91, 98 (D.D.C. 1999), *aff'd,* 38 F. App'x. 4 (D.C. Cir. 2002) ("[W]here a document is referred to in the complaint and is central to plaintiff's claim, such a document attached to the motion papers may be considered without converting the motion to one for summary judgment.") (citing *Greenberg v. The Life Ins. Co. of Va.,* 177 F.3d 507, 514 (6th Cir. 1999)); *see also Kaempe v. Myers*, 367 F.3d 958, 965 (D.C. Cir. 2004) (a court may consider "public records subject to judicial notice on a motion to dismiss").

Agreement requires the United States to "declare inadmissible" and "reject any . . . claim" from an individual falling within one of these four categories. *Id.* § 6(2)(b).

Annexed to the Agreement is a "Form of Written Undertaking" ("Form") which a claimant must sign before receiving any payment from the Fund. *See* Agreement Annex. The Form requires the claimant to provide "documentation establishing nationality" and to declare under penalty of perjury that he or she had not received compensation related to a Holocaust deportation claim from any French programs or any other State's compensation program. *Id.* The Agreement directs that the United States "shall rely" on the sworn statements included in the Form to determine whether the claimant falls within one of the four categories not covered by the Agreement. Agreement § 6(2)(c).

### B.  Plaintiff's Complaint

In 2016, Plaintiff Solange Faktor filed a claim with the U.S. Department of State to receive compensation from the Fund. Compl. ¶ 1. Plaintiff's mother was deported to the Auschwitz concentration camp on July 31, 1943 and was killed. *Id.* ¶ 12. Plaintiff's father survived and passed away in France in 1980. *Id.* Plaintiff filed the claim on behalf of her father's estate. *Id.* ¶ 13. Although Plaintiff notes that her father died in France, she indicates that he was "stateless" when he died.[3] *Id.* ¶¶  12, 14. Plaintiff does not have a death certificate for her father. *Id.* ¶¶ 16, 19.

On April 11, 2018, Plaintiff received notice that the State Department had rejected her claim. *Id.*  ¶ 13. Plaintiff alleges that the State Department rejected her claim because she had not submitted documentary evidence that her father was "stateless" and because she did not submit a copy of his death certificate. *Id.* ¶¶ 14, 16. Plaintiff filed with her original claim form a sworn

---

[3] Plaintiff does not indicate where her father was born, or with what country he was associated before he became stateless.

3

affidavit "including the information that her father was stateless, and the date of his death, was true and correct." *Id.* ¶ 15. She later submitted a second affidavit, "again swearing that her father was stateless, that he passed away in 1980 and that she did not have a copy of his death certificate." *Id.* ¶ 16. Plaintiff contends that her affidavits were "in the form specifically required in accordance with the terms of the Agreement," and should have been sufficient to entitle her to compensation under the Agreement. *Id.* ¶¶ 4, 5, 15, 24. She also notes that her counsel provided a letter to the State Department "regarding the difficulty in trying to prove statelessness." *Id.* ¶ 20. According to Plaintiff, the State Department's rejection of her claim—based on its rejection of her "sworn affidavit evidence"—"violates" the Agreement and constitutes a "wrongful act" actionable under the FTCA. *Id.* ¶¶ 6, 23, 24. Plaintiff seeks declaratory judgment and money damages of $93,141.60, the amount she claims she should have received from the Fund had her claim been approved. *See id.* at 6.

The United States moved to dismiss Plaintiff's Complaint for lack of subject matter jurisdiction arguing that Plaintiff has failed to establish that the United States waived sovereign immunity for her claim under the FTCA. Plaintiff opposed Defendant's motion, which is now ripe for the Court's consideration.

## II.    LEGAL STANDARD

A court must dismiss a case when it lacks subject matter jurisdiction pursuant to Federal Rule of Civil procedure 12(b)(1). To determine whether there is jurisdiction, the Court may "consider the complaint supplemented by undisputed facts evidenced in the record, or the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Coal. for Underground Expansion v. Mineta,* 333 F. 3d 193, 198 (D.C. Cir. 2003) (citations omitted); *see also Jerome Stevens Pharm., Inc. v. Food & Drug Admin.*, 402 F.3d 1249, 1253

4

(D.C. Cir. 2005) ("[T]he district court may consider materials outside the pleadings in deciding whether to grant a motion to dismiss for lack of jurisdiction.").

In reviewing a motion to dismiss pursuant to Rule 12(b)(1), courts must accept as true all factual allegations in the complaint and construe the complaint liberally, granting the plaintiff the benefit of all inferences that can be drawn from the facts alleged. *See Settles v. U.S. Parole Comm'n*, 429 F.3d 1098, 1106 (D.C. Cir. 2005) ("At the motion to dismiss stage, counseled complaints as well as *pro se* complaints, are to be construed with sufficient liberality to afford all possible inferences favorable to the pleader on allegations of fact."); *Koutny v. Martin*, 530 F. Supp. 2d 84, 87 (D.D.C. 2007) ("[A] court accepts as true all of the factual allegations contained in the complaint . . . and may also consider undisputed facts evidenced in the record." (internal citations and quotation marks omitted)).

Despite the favorable inferences afforded to a plaintiff on a motion to dismiss, it remains the plaintiff's burden to prove subject matter jurisdiction by a preponderance of the evidence. *Am. Farm Bureau v. Envtl. Prot. Agency*, 121 F. Supp. 2d 84, 90 (D.D.C. 2000). "Although a court must accept as true all factual allegations contained in the complaint when reviewing a motion to dismiss pursuant to Rule 12(b)(1), [a] plaintiff['s] factual allegations in the complaint . . . will bear closer scrutiny in resolving a 12(b)(1) motion than in resolving a 12(b)(6) motion for failure to state a claim." *Wright v. Foreign Serv. Grievance Bd.*, 503 F. Supp. 2d 163, 170 (D.D.C. 2007) (internal citations and quotation marks omitted). A court need not accept as true "a legal conclusion couched as a factual allegation" or an inference "unsupported by the facts set out in the complaint." *Trudeau v. Fed. Trade Comm'n*, 456 F.3d 178, 193 (D.C. Cir. 2006) (internal citation and quotation marks omitted).

### III.   DISCUSSION

The United States moves to dismiss Plaintiff's claim, arguing that Plaintiff has failed to demonstrate a private analog for her FTCA claim  under District of Columbia law. Def.'s Mot. at 3. As such, Plaintiff has not demonstrated that the United States has waived its sovereign immunity with respect to her claim and therefore the Court lacks jurisdiction. *Id.* The Court agrees that Plaintiff has failed to establish that a private analog for her claim exists under D.C. law and therefore has failed to demonstrate that her claim is covered by the FTCA's limited waiver of sovereign immunity. Accordingly, the Court shall grant Defendant's motion and shall dismiss Plaintiff's Complaint for lack of subject matter jurisdiction.[4]

In general, "the federal government, its agencies, and federal officials when sued in their official capacities, are absolutely shielded from tort actions for damages unless sovereign immunity has been waived." *Kline v. Republic of El Salvador*, 603 F. Supp. 1313, 1316 (D.D.C. 1985) (citing *United States v. Testan*, 424 U.S. 392, 399 (1976); *United States v. Mitchell*, 445 U.S. 535, 538 (1980)). "The FTCA operates as a limited waiver of sovereign immunity, rendering the United States amenable to suit for certain, but not all, tort claims." *Rashad v. D.C. Cent. Det. Facility*, 570 F. Supp. 2d 20, 23 (D.D.C. 2008) (citing *Richards v. United States*, 369 U.S. 1, 6 (1962)).

The FTCA does not create a cause of action against the United States. *Hornbeck Offshore Transp., LLC v. United States*, 569 F.3d 506, 508 (D.C. Cir. 2009). Rather, it "allows the United States to be liable if a private party would be held liable under similar circumstances in the

---

[4] Although the Court has conducted an independent review of Plaintiff's claims and legal arguments in this matter, as well as the relevant legal authority, its analysis in this section tracks, in large part, the thorough reasoning articulated by Judge Ketanji Brown Jackson during the March 1, 2021 hearing on the [20] Order granting the United States' motion to dismiss in *Schneider et al. v. United States*, 20-cv-260-KBJ (D.D.C.).

relevant jurisdiction." *Id.*  Accordingly, the Court "look[s] to the law of the local jurisdiction—in this case, the District of Columbia—to determine whether there is a local private party analog to [the plaintiff's] claims." *Id.*; *see also Whittaker v. Court Servs. & Offender Supervision Agency for D.C.*, 401 F. Supp. 3d 170, 183 (D.D.C. 2019) ("[T]he Court must determine whether or not a private person can be sued under District of Columbia law for claims similar to those which Plaintiff alleges against Defendants."). "Subject matter jurisdiction is lacking . . . when no local law could reasonably apply to the government action alleged in the complaint." *Loughlin v. United States*, 230 F. Supp. 2d 26, 44 (D.D.C. 2002). The party bringing suit against the United States "bears the burden of proving that the government has unequivocally waived its immunity" for the type of claim involved. *Tri-State Hosp. Supply Corp. v. United States*, 341 F.3d 571, 575 (D.C. Cir. 2003).

Plaintiff has not carried her burden to demonstrate a private analog for her claim against the United States under District of Columbia law.[5] Plaintiff has not cited—and the Court has not identified—any District of Columbia law imposing liability on a private individual for negligent adjudication of individual claims made pursuant to an international agreement between the United States and a foreign nation. Plaintiff instead analogizes the role of the State Department in administering the Fund to that "of a private claims administrator," suggesting that "the Agreement itself bears a striking resemblance to the settlement of a class action[.]"Pl.'s Opp'n at 5-6. Even assuming that the State Department's *function* in administering the Fund is similar to that of a class action claims administrator, Plaintiff still must demonstrate that "negligent

---

[5] Though not explicit in her Complaint, Plaintiff concedes in her Opposition that the "wrongful act" she claims under the FTCA is the State Department's "negligent" failure to consider her sworn affidavit. *See* Pl.'s Opp'n at 3. Plaintiff argues, therefore, that the private analog for her FTCA claim lies in District of Columbia negligence law.

administration" of such funds would give rise to tort liability under D.C. law.[6]

To maintain a negligence claim under District of Columbia law, a plaintiff must establish "a duty of care, a deviation from that duty, and a causal relationship between that deviation and an injury sustained by the plaintiff." *Childs v. Purll*, 882 A.2d 227, 233 (D.C. 2005) (quoting *Youssef v. 3636 Corp.*, 777 A.2d 787, 792 (D.C. 2001)); *see also Hedgepeth v. Whitman Walker Clinic*, 22 A.3d 789, 793 (D.C. 2011) ("It is well-established that a claim alleging the tort of negligence must show: (1) that the defendant owed a duty to the plaintiff, (2) breach of that duty, and (3) injury to the plaintiff that was proximately caused by the breach."). The Court finds that Plaintiff's allegations fails to support any "duty" owed to her by the United States, or any "breach" of that duty.

Plaintiff has not identified any analogous duty of care that would give rise to liability under District of Columbia law. Plaintiff's Complaint appears to rely on the Agreement as the source of the United States' duty; she alleges that the "wrongful act" committed by the United States was its purported failure to rely on her sworn affidavits—which Plaintiff contends violated the Agreement. *See* Compl. ¶¶ 4-5. The problem with this theory is that the District of Columbia law precludes *tort* liability for the failure to comply with a *contract*: "the tort must exist in its own right independent of the contract, and any duty upon which the tort is based must flow from considerations *other than the contractual relationship.*" *Choharis v. State Farm Fire & Cas. Co.*, 961 A.2d 1080, 1089 (D.C. 2008) (emphasis added). "The tort must stand as a tort even if the

---

[6] Plaintiff concedes that there is no District of Columbia case in which a class action claims administrator has been held liable in *tort* for *negligent* mishandling of a settlement fund. *See* Pl.'s Surreply at 2 n.1 Plaintiff cites only one unpublished out-of-circuit federal decision in which the court denied a motion to dismiss the plaintiff's claim that a settlement administrator negligently supervised its employees. *See Oetting v. Heffler*, 2015 WL 9190629, at *1 (E.D. Pa. Dec. 17, 2015). But even that case, as Plaintiff acknowledges, contained no "specific discussion regarding the negligence claim." Pl.'s Surreply at 2 n.1.

contractual relationship did not exist." *Id.*; *see also Himmelstein v. Comcast of the Dist.*, 908 F. Supp. 23 49, 44 (D.D.C. 2012) ("A negligence claim based solely on a breach of the duty to fulfill one's obligations under a contract . . . is duplicative and unsustainable."). Here, Plaintiff's claim appears to rest on obligations created by the Agreement—namely, that the United States "shall rely" on sworn affidavits to determine eligibility for a payment from the Fund. *See* Compl. ¶¶ 3, 4, 6, 17, 23. Accordingly, any "duty" imposed on the United States to consider a claimant's affidavit arises from the *Agreement* and not from a stand-alone tort duty. Absent such *contractual* obligation created by the Agreement, it is not clear that the United States would owe any *tort* duty of care to Plaintiff.

Nonetheless, Plaintiff argues that the "duty" owed to her by the State Department does not arise from the Agreement, but instead arises from "special relationship" between "a service provider and a third party." Pl.'s Surreply at 3. In support of this "special relationship theory," Plaintiff relies on the D.C. Court of Appeals' decision in *Aguilar v. RP MRP Wash. Harbor, LLC*, 98 A.3d 979 (D.C. 2014). In that case, the court adopted the "economic loss rule," which holds that "a plaintiff who suffers only pecuniary injury as a result of the conduct of another cannot recover those losses in tort." *Id.* (quoting *Apollo Grp., Inc. v. Avnet, Inc.*, 58 F.3d 477, 479 (9th Cir. 1995)) (internal quotation marks omitted). The court held that this rule "bars recovery of purely economic losses in negligence, subject only to one limited exception where a *special relationship* exists." *Id.* at 986 (emphasis added). Applying this rule, the Court in *Aguilar* concluded that there was no "special relationship" between the owners of a retail complex and the employees of the complex's stores, who lost income when the stores closed after a flood. *Id.* at 980-81. The plaintiff-employees sued the owner-defendants for negligence and argued that because the owner-defendants had "sole control" over the property's flood walls, they owed the

employees a duty of care to ensure the safety of the retail complex by raising the flood walls when warned of an impending storm. *Id.* at 981. The Court of Appeals disagreed, concluding that the plaintiffs failed to demonstrate a "special relationship" because there was "no obligation on the part of [the owners] to care for [the employees'] economic well-being. *Id.* at 985. In contrast, the D.C. Court of Appeals in *Whitt v. Am. Prop. Constr., P.C.*, 157 A.3d 196 (D.C. 2017), applying the economic loss rule articulated in *Aguilar*, concluded that a special relationship did exist between the plaintiff, a hair salon owner, and the defendants, companies undertaking construction activities which disrupted the plaintiff's business. *Id.* at 199-200, 204-05. Specifically, the court noted that a permit authorizing the construction activities "recognized the impact that [defendants'] actions would have on [plaintiff's] business when it required that the construction 'not block access'" to the plaintiff's business entrance. *Id.* at 205. The court reasoned that these permit requirements provided evidence that defendants "undertook obligations that would 'implicate' [plaintiff's] economic expectancies.'" *Id.* (citing *Aguilar*, 98 A.3d at 985). Considering these permit requirements and the "extensive [construction] activity over a prolonged period," the court concluded that the parties were in a "special relationship," meaning that defendant owed plaintiff a duty of care—the breach of which would subject the defendant to tort liability. *Id.* at 205-06.

Here, Plaintiff offers *no* support for her claim that she and the United States had a "special relationship" giving rise to a duty of care. Her argument rests merely on the conclusory assertion that "there is a 'special relationship' between Plaintiff and Defendant." Pl.'s Surreply at 3; *see also id.* at 4 ("As a claims administrator, the State Department owes a duty of care to the claimants with whom it has a special relationship, as defined in *Aguilar*."). But she provides *no* reasoning or facts supporting this contention. Nor does she provide any legal authority in which a

District of Columbia court has found a "special relationship" based on a similar relationship between a purported claims administrator and claimant. *Id.* The Court, therefore, finds that Plaintiff has not demonstrated that she falls within the "special relationship" exception to the District of Columbia's economic loss rule precluding recovery in *tort* for pecuniary loss. Absent sufficient support for a "special relationship" between the parties, Plaintiff cannot demonstrate that the United States owed her any duty of care. Because this argument fails, Plaintiff has failed to carry her burden to demonstrate a private analog to her "negligence" claim under District of Columbia law. *See Gilbert v. Miodovnik*, 990 A.2d 983, 988 (D.C. 2010) ("Negligence is a breach of duty; if there is no duty, there can be no breach, and hence no negligence." (quoting *N.O.L. v. District of Columbia*, 674 A.2d 498, 499 n.2 (D.C. 1996))).

Even assuming *arguendo* that the United States owed Plaintiff a duty of care as a "claims administrator," the Court is unpersuaded that the alleged conduct of the State Department amounts to a "breach" of any duty under District of Columbia law. Plaintiff alleges that the State Department's "wrongful" act was its failure to consider her sworn affidavits attesting to her father's statelessness and death. *See* Compl. ¶¶ 15, 17, 24. Plaintiff argues that "[s]tate employees performed their work negligently, wrongly, *and capriciously*" and that "[t]he[ir] wrongful conduct included ignoring or *arbitrarily* rejecting evidence." Pl.'s Opp'n at 3, 4 (emphases added). These allegations sound in the "arbitrary and capricious" standard of review applied to agency action under the Administrative Procedure Act rather than a failure to exercise due care under common law. *See, e.g.*, *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (explaining that an agency action would be "arbitrary and capricious if the agency has . . . entirely failed to consider an important aspect of the problem, [or] offered an explanation for its decision that runs counter to the evidence before the agency").

Accordingly, the Court finds that Plaintiff has failed to establish a "breach" of any duty supporting her theory of negligence.

Because Plaintiff has not demonstrated a private analog for her "negligence" claim against the United States, she has failed to carry her burden of proving that the FTCA's limited waiver of sovereign immunity applies to her claim.[7] *See Tri-State Hosp.*, 341 F.3d at 575. The Court shall, therefore, dismiss her FTCA claim for lack of subject matter jurisdiction. Plaintiff has indicated her intention to file an amended complaint asserting an APA claim. *See* Pl.'s Surreply at 4 n.2. If Plaintiff seeks to amend her complaint, she must file a motion in compliance with Local Civil Rules 7(i) and 15.1 by **no later than March 26, 2021.** If Plaintiff does not file a motion for leave to amend her complaint by that date, this case shall be dismissed with prejudice.

## IV.     CONCLUSION

For the foregoing reasons, the Court GRANTS the United States' Motion to Dismiss for lack of subject matter jurisdiction and DISMISSES without prejudice Plaintiff's Complaint. Plaintiff may file a motion for leave to  amend the complaint by March 26, 2021. If she does not do so, this case shall be dismissed with prejudice. An appropriate Order accompanies this Memorandum Opinion.

/s/
COLLEEN KOLLAR-KOTELLY
UNITED STATES DISTRICT JUDGE

---

[7] The United States also argues that even if Plaintiff's claim is actionable under the FTCA, it would fall within the "discretionary function" and/or "foreign country exceptions" to the FTCA. *See* Def.'s Mot. at 7-9. Because the Court finds that Plaintiff has failed to demonstrate that her claim is actionable under the FTCA, it does not reach the question of whether either of these exceptions applies.