## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

SOLANGE FAKTOR,

               Plaintiff,

     v.

UNITED STATES,

               Defendant.

Civil Action No. 20-263 (CKK)

### MEMORANDUM OPINION
(March 10, 2022)

Plaintiff Solange Faktor brings this lawsuit challenging a decision by the United States Department of State to deny her claim for compensation pursuant to the Agreement between the United States and France on Compensation of Certain Victims of Holocaust-Related Deportations In her Amended Complaint, Plaintiff claims that the denial of her claim was arbitrary and capricious in violation of the Administrative Procedure Act, 5 U.S.C. § 701 *et seq.*

Before the Court is the United States' [29] Motion to Dismiss to Plaintiff's Amended Complaint, in which the United States argues that the Court lacks subject matter jurisdiction and that Plaintiff's Amended Complaint fails to state a claim upon which relief may be granted. Upon review of the pleadings,[1] the relevant legal authorities, and the record as a whole, the Court shall **GRANT** Defendant's Motion to Dismiss the Amended Complaint.

---

[1] The Court's consideration has focused on:
- Defendant's Memorandum of Points and Authorities in Support of Defendant's Motion to Dismiss ("Def.'s Mot."), ECF No. 29-1;
- Plaintiff's Opposition to Defendant's Motion to Dismiss the Amended Complaint ("Pl.'s Opp'n"), ECF No. 30; and
- Defendant's Reply in Support of Motion to Dismiss ("Def.'s Reply"), ECF No. 31.

In an exercise of its discretion, the Court finds that holding oral argument in this action would not be of assistance in rendering a decision. *See* LCvR 7(f).

# I.   BACKGROUND

## A.  Agreement between the United States and France to Compensate Victims of Holocaust-Related Deportations

In 2014, the United States and France executed an "Agreement for Compensation on Certain Victims of Holocaust-Related Deportations from France Who Are not Covered by French Programs."[2]  *See* Def.'s Mot. Ex. A ("Agreement"), ECF No. 29-2.  The Agreement was established to provide "an exclusive mechanism for compensating persons who survived deportation from France [during World War II], their surviving spouses, or their assigns." Agreement § 2(1).  Pursuant to the Agreement, the French government transferred $60 million to the United States to create a fund for Holocaust deportation claims ("Fund").  *Id.* § 4(1).  The United States has the "sole discretion" to administer the Fund, "according to criteria which it shall determine unilaterally" and "for which it shall be solely responsible."  *Id.* § 6(1).

The Agreement carves out four categories of claimants who are ineligible to receive payments from the Fund for Holocaust deportation claims: (1) French nationals; (2) nationals of other countries who "have received or are eligible to receive" compensation under another international agreement made by France addressing Holocaust deportation claims; (3) persons who "have received or are eligible to receive" compensation under France's reparation measure for orphans whose parents died in deportation; and (4) persons who have received compensation under "another State's program providing compensation specifically for Holocaust deportation."  *Id.*

---

[2]  The Amended Complaint "specifically references" the Agreement, which is "central" to Plaintiff's claim, so the Court shall consider it without converting Defendant's motion into one for summary judgment.  *See Banneker Ventures, LLC v. Graham*, 798 F.3d 1119, 1133 (D.C. Cir. 2015); *Vanover v. Hantman,* 77 F. Supp. 2d 91, 98 (D.D.C. 1999), *aff'd,* 38 F. App'x. 4 (D.C. Cir. 2002) ("[W]here a document is referred to in the complaint and is central to plaintiff's claim, such a document attached to the motion papers may be considered without converting the motion to one for summary judgment.") (citing *Greenberg v. The Life Ins. Co. of Va.*, 177 F.3d 507, 514 (6th Cir. 1999)); *see also Kaempe v. Myers*, 367 F.3d 958, 965 (D.C. Cir. 2004) (a court may consider "public records subject to judicial notice on a motion to dismiss").

§§ 3(1)–(4), 6(2)(b). The Agreement requires the United States to "declare inadmissible" and "reject any . . . claim" from an individual within one of these four categories. *Id.* § 6(2)(b). Annexed to the Agreement is a "Form of Written Undertaking" ("Form") which a claimant must sign before receiving any payment from the Fund. *See* Agreement Annex. The Form requires the claimant to provide "documentation establishing nationality" and to declare under penalty of perjury that he or she had not received compensation related to a Holocaust deportation claim from any French programs or any other State's compensation program. *Id.* The Agreement directs that the United States "shall rely" on the sworn statements included in the Form to determine whether the claimant falls within one of the four categories not covered by the Agreement. Agreement § 6(2)(c). The Agreement provides that "[a]ny dispute arising out of the interpretation or performance of this Agreement shall be settled *exclusively* by way of consultation between the parties." *Id.* § 8 (emphasis added).

## B. Plaintiff's Claims

Plaintiff Solange Faktor filed a claim with the U.S. Department of State to receive compensation from the Fund. Am. Compl. ¶ 10. Plaintiff's mother was deported to the Auschwitz concentration camp on July 31, 1943, where she was killed. *Id.* ¶ 9. Plaintiff's father survived and passed away in France in 1980. *Id.* Plaintiff filed the claim on behalf of her father's estate. *Id.* ¶ 10. Although Plaintiff notes that her father died in France, she indicates that he was "stateless" when he died.[3] *Id.* ¶¶ 10, 12. Plaintiff does not have a death certificate for her father. *Id.* ¶¶ 12, 13.

On April 3, 2018, Plaintiff received notice that the State Department had rejected her claim. *Id.* ¶ 5. Plaintiff alleges that the State Department rejected her claim because she had not submitted

---

[3] Plaintiff does not indicate where her father was born, or with what country he was associated before he became stateless.

documentary evidence that her father was "stateless" and because she did not submit a copy of his

death certificate.  *Id.* ¶ 10.  Plaintiff filed with her original claim form a sworn affidavit "including

the information that her father was stateless, and the date of his death, was true and correct."  *Id.*

¶ 11.  She later submitted a second affidavit, "again swearing that her father was stateless, that he

passed away in 1980 and that she did not have a copy of his death certificate."  *Id.* ¶ 12.  Plaintiff

contends that her affidavits were "in the form specifically required in accordance with the terms

of the Agreement," and should have been sufficient to entitle her to compensation under the

Agreement.  *Id.* ¶ 11.  She also notes that her counsel provided a letter to the State Department

"regarding the difficulty in trying to prove statelessness."  *Id.* ¶ 14.  According to Plaintiff, the

State Department's rejection of her claim—based on its rejection of her "sworn affidavit

evidence"—"violates" the Agreement and constitutes an "arbitrary and capricious" agency action

under the APA.  *Id.* ¶¶ 17, 18.

Plaintiff seeks an order pursuant to the APA and the Declaratory Judgment Act, 28 U.S.C.

§ 2201 *et seq.*, declaring that the United States failed to "honor the terms of the Agreement," that

her claim "should be approved based on the evidence" she provided, and that its denial "was

arbitrary and capricious and should be overturned."  Am. Compl. at 6–7.  She further seeks an

order declaring that she is entitled to receive compensation "in the amount that would otherwise

be paid . . . had she been initially approved as eligible," as well as "supplemental payments paid

to all eligible claimants" of the same status.  *Id.* at 7.

### C.  Procedural Background

Plaintiff filed her Original Complaint in this action on January 31, 2020.  Compl., ECF No.

1.  The Original Complaint asserted a claim under the Federal Tort Claims Act ("FTCA"), based

on the same facts presented above.  The United States moved to dismiss Plaintiff's Complaint for

lack of subject matter jurisdiction arguing that Plaintiff had failed to establish that the United States waived sovereign immunity for her claim under the FTCA.  The Court granted Defendant's Motion to Dismiss.  *See* Order, ECF No. 23; Mem. Op., ECF No. 24.  However, consistent with other courts in this jurisdiction, the Court allowed Plaintiff to file a motion for leave to amend the complaint to assert an APA claim.  *Id.*  The United States consented to Plaintiff's motion to amend her complaint.  *See* ECF No. 28.

The United States has again moved to dismiss the Amended Complaint, contending that the Court lacks subject matter jurisdiction and that the Complaint fails to state a claim upon which relief may be granted.  *See generally* Def.'s Mot.  That motion is now ripe.

## II.    LEGAL STANDARD

### A.  Federal Rule of Civil Procedure 12(b)(1)

A court must dismiss a case when it lacks subject matter jurisdiction pursuant to Federal Rule of Civil procedure 12(b)(1).  To determine whether there is jurisdiction, the Court may "consider the complaint supplemented by undisputed facts evidenced in the record, or the complaint supplemented by undisputed facts plus the court's resolution of disputed facts."  *Coal. for Underground Expansion v. Mineta*, 333 F. 3d 193, 198 (D.C. Cir. 2003) (citations omitted); *see also Jerome Stevens Pharm., Inc. v. Food & Drug Admin.,* 402 F.3d 1249, 1253 (D.C. Cir. 2005) ("[T]he district court may consider materials outside the pleadings in deciding whether to grant a motion to dismiss for lack of jurisdiction.").

In reviewing a motion to dismiss pursuant to Rule 12(b)(1), courts must accept as true all factual allegations in the complaint and construe the complaint liberally, granting the plaintiff the benefit of all inferences that can be drawn from the facts alleged.  *See Settles v. U.S. Parole Comm'n,* 429 F.3d 1098, 1106 (D.C. Cir. 2005).  Despite the favorable inferences afforded to a plaintiff on a motion to dismiss, it remains the plaintiff's burden to prove subject matter jurisdiction

by a preponderance of the evidence. *Am. Farm Bureau v. Environmental Prot. Agency,* 121 F. Supp. 2d 84, 90 (D.D.C. 2000). "Although a court must accept as true all factual allegations contained in the complaint when reviewing a motion to dismiss pursuant to Rule 12(b)(1), [a] plaintiff['s] factual allegations in the complaint . . . will bear closer scrutiny in resolving a 12(b)(1) motion than in resolving a 12(b)(6) motion for failure to state a claim." *Wright v. Foreign Serv. Grievance Bd.*, 503 F. Supp. 2d 163, 170 (D.D.C. 2007) (internal citations and quotation marks omitted) (quoting *Grand Lodge of Fraternal Order of Police v. Ashcroft*, 185 F. Supp. 2d 9, 13–14 (D.D.C. 2001), *aff'd*, 2008 WL 4068606 (D.C. Cir. Mar. 17, 2008)). A court need not accept as true "a legal conclusion couched as a factual allegation" or an inference "unsupported by the facts set out in the complaint." *Trudeau v. Fed. Trade Comm'n*, 456 F.3d 178, 193 (D.C. Cir. 2006) (internal citation and quotation marks omitted).

## B. Federal Rule of Civil Procedure 12(b)(6)

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a party may move to dismiss a complaint on the grounds that it "fail[s] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "[A] complaint [does not] suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007)). Rather, a complaint must contain sufficient factual allegations that, if accepted as true, "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Courts "do not accept as true, however, the plaintiff's legal conclusions or inferences that are unsupported by the facts alleged." *Ralls Corp.*, 758 F.3d at 315.

### III.   DISCUSSION

#### A.  Political Question Doctrine

The United States argues that the Court lacks subject matter jurisdiction because Plaintiff's claim raises a nonjusticiable political question.  *See* Def.'s Mot. at 16–23.  Specifically, the United States contends that Plaintiff is "asking the Court to oversee the [State] Department's interpretation and implementation of an international agreement that the executive [branch] negotiated" and to "second-guess the Department's determination . . . as to whether individual claimants are eligible to receive compensation[.]"   *Id.* at 22.   Plaintiff responds that she is merely challenging Defendant's alleged "misapplication" of its own procedures in rejecting her claim.  *See* Pl.'s Opp'n at 10.

"The political question doctrine is essentially a function of the separation of powers, and excludes from judicial review those controversies which revolve around policy choices and value determinations constitutionally committed for resolution to the halls of Congress or the confines of the Executive Branch."  *El-Shifa Pharm. Indus. Co. v. United States*, 607 F.3d 836, 840 (D.C. Cir. 2010)  (internal citations and quotation marks omitted).  "[A]lthough many foreign policy decisions fall into this category, the Supreme Court has cautioned that 'it is error to suppose that every case or controversy which touches foreign relations lies beyond judicial cognizance.'" *Schieber v. United States*, Civil Action No. 21-1371 (JDB), 2022 WL 227082, at *4 (D.D.C. Jan. 26, 2022) (quoting *Baker v. Carr*, 369 U.S. 186, 211 (1986)).

Another court in this jurisdiction has recently confronted whether a case presenting virtually identical facts and claims as those raised here presents a nonjusticiable political question.[4]

---

[4] As in this case, the plaintiff in *Schieber* sought compensation from the Fund on behalf of the estate of her father, who was "stateless" at the time of his death. 2022 WL 2270982, at *2.  That plaintiff also submitted two affidavits attesting to her father's status as "stateless" and swearing that she did not have a copy of his death certificate.  *Id.*  The State Department rejected that

*See Schieber*, 2022 WL 227082, at \*4–5.  Observing that that the "bounds of the political question doctrine remain 'murky and unsettled,'" and relying on the "D.C. Circuit's preference to resolve a case on the basis of whether plaintiffs 'ha[d] a cause of action in an American court' instead of addressing the political question doctrine," the court in *Schieber* "reserve[d] judgment on the government's political question argument and instead consider[ed] whether [the plaintiff] has a cause of action to raise her claims in this Court."  *Id.* at \*5 (citing *Harbury v. Hayden*, 522 F.3d 413, 418 (D.C. Cir. 2008); *Comm. of U.S. Citizens Living in Nicaragua v. Reagan*, 859 U.S. 929, 933 (D.C. Cir. 1988)).  Guided by this same precedent, the Court shall adopt the approach taken by the court in *Schieber* and shall move on to consider whether Plaintiff has a cause of action to raise her claims in this Court.

### B.  Private Right of Action

The United States next argues that Plaintiff cannot assert a claim under the APA because the Agreement does not create a private cause of action.  Def.'s Mot. at 9.  According to the government, "[t]hat the Agreement does not create a private right of action operates as a limitation on judicial review under 5 U.S.C. § 702."  *Id.*  In response, Plaintiff argues that she "does not rely on the Agreement as the source of [her] cause of action against the State Department."  Pl.'s Opp'n at 5.  Instead, she contends that her claims involve "domestic wrongs committed" by the State Department in the course of processing her claim for compensation from the Fund, and that her "right of action is specifically created by the APA[.]"  *Id.* at 3, 6.

Plaintiff's own allegations in the Complaint belie her argument that she does not "rely on the Agreement" as the source of her cause of action.  For example, Plaintiff alleges that the

---

plaintiff's claim for compensation from the Fund based on its position that the plaintiff had "provided no evidence of the fact that her father was stateless," and that the State Department had "been unable to find proof of statelessness."  *Id.*  The plaintiff in that case brought the same APA claim, seeking the same relief as Plaintiff in this case.

"*language of the Agreement itself* was a mandate" requiring the State Department to accept sworn affidavits of nationality, and that it was the "[f]ailure to treat Plaintiff Faktor in accordance with *the terms of the Agreement*" that rendered the agency's decision "arbitrary and capricious."  Am. Compl. ¶ 11 (emphases added).  Plaintiff also alleges that the State Department's rejection of her claim was "not a reasonable interpretation *of the Agreement*."  *Id.* ¶ 19 (emphasis added).  Even in her Opposition to Defendant's Motion to Dismiss, Plaintiff acknowledges that she "is asking the Defendant to adhere to the *purpose and language of the Agreement*."  Pl.'s Opp'n at 12 (emphasis added).  In sum, Plaintiff's argument that her claims are not "based on the Agreement" strains credulity based on her own claims and allegations in the Amended Complaint.  As did the court in *Schieber*, the Court here finds that Plaintiff's claims are "based on the Agreement" and shall next consider "whether the Agreement provides a private right of action and, if not, whether it imposes a "limitation on judicial review" under the APA.  2022 WL 227082, at *6.

Under the APA, a person who is "suffering a legal wrong because of agency action . . .  is entitled to judicial review thereof."  5 U.S.C. § 702.  A court must "set aside agency action" that is "arbitrary, capricious, . . . or otherwise not in accordance with law," *id.* § 706(2)(A).  However, nothing in the APA "(1) affects other limitations on judicial review or the power or duty of the court to dismiss any action . . . on any other appropriate legal or equitable ground; or (2) confers authority to grant relief if any other statute that grants consent to suit expressly or impliedly forbids the relief which is sought."  *Id.* § 702.

As pertinent to this case, because treaties and executive agreements have "the force of law," they are "subject to review under the APA," but *only* "when a private right of action is afforded."  *Schieber*, 2022 WL 227082, at *7 (citing *De la Torre v. United States*, Nos. C 02–1942 CRB, C 01–0892–CRB, C 02–1943–CRB, C 02–1944–CRB, 2004 WL 3710194, at *8–9 (N.D. Cal. Apr.

14, 2004); *McKesson Corp. v. Islamic Republic of Iran*, 539 F.3d 485, 488–89, 491 (D.C. Cir. 2008)).  There is a presumption that international agreements *do not* create a private cause of action.  *Medellín v. Texas*, 552 U.S. 491, 506 n.3 (2008); *McKesson Corp.*, 539 F.3d at 488–89; *Mora v. New York*, 524 F.3d 183, 201 & n.25 (2d Cir. 2008) (collecting cases).  Overcoming this presumption requires that "the agreement itself reflects an intent to create judicially enforceable private rights."  *United States v. Sum of $70,990,605*, 234 F. Supp. 3d 212, 237–38 (D.D.C. 2017) (citing Restatement (Third) of Foreign Relations Law of the United States § 907 cmt. a (Am. Law Inst. 1986)).  In the absence of such a "textual invitation to participation," an international agreement is enforceable only "through bilateral interaction between its signatories," *McKesson Corp.*, 539 F.3d at 491, and "not by the adjudication of private suits," *Schieber*, 2022 WL 227082, at *7.

The Court agrees with the United States that the "text and context" of the Agreement demonstrate that it does *not* create any judicially enforceable right for any individual claimant seeking compensation from the Fund.  Def.'s Mot. at 11.  For example, the text of the Agreement itself directs that the United States shall distribute funds "according to criteria which it shall determine *unilaterally, in its sole discretion*" and for which it shall be "*solely* responsible."  Agreement § 6(1) (emphases added).  It further directs that "[a]ny dispute arising out of the interpretation or performance of this Agreement shall be settled *exclusively by way of consultation between the Parties*" (i.e., the United States and France), *id.* § 8 (emphasis added).  As to the "context" of the Agreement, although it was "intended to benefit individual claimants," the relevant inquiry is whether it "indicate[s] an intent by its creators than any of [its] terms . . . would give rise to affirmative, judicially-enforceable obligations on behalf of individual claimants."  *Schieber*, 2022 WL 227082, at *7 (internal quotation marks omitted);  *see also De la Torre*, 2004

WL 3710194, at *1–2 (concluding that agreements between the United States and Mexico intended to improve conditions for Mexican citizens working in the United States were not enforceable by individual workers).  The Court finds no evidence of the Agreement's intent to create such "judicially-enforceable obligations" on behalf of any individual claimant, including Plaintiff.

In sum, the Agreement's "text and context indicate that it is *not* intended to be enforceable" by individual claimants seeking compensation from the Fund.  *Schieber*, 2022 WL 227082, at *7. Therefore, the Agreement provides no private cause of action, and so Plaintiff "cannot state a claim under the APA for the Secretary's alleged violation of the Agreement."  *Id.*  The lack of a private cause of action serves as an independent limitation on the Court's review of the government's denial of Plaintiff's claim.  *See id.*

### C.  Preclusion of Judicial Review

The United States also argues that, even if the Agreement does not operate as a limitation on judicial review under APA § 702, it nonetheless precludes judicial review under § 701(a)(1). Def.'s Mot. at 12–13  The United States relies on the language in the Agreement limiting the resolution of any disputes arising therefrom to "consultation" between the United States and France.  *Id.* at 13; *see* Agreement § 8 ("Any dispute arising out of the interpretation or performance of this Agreement shall be settled exclusively by way of consultation between the parties.").  The Court agrees that this provision precludes judicial review.

The APA does not provide a cause of action for a person injured by alleged unlawful agency action "to the extent that statutes preclude judicial review."  5 U.S.C. § 701(a)(1).  As other courts have explained, treaties may preclude judicial review under this section of the APA.  *See United States v. Moloney (In re Price)*, 685 F.3d 1, 13–14 (1st Cir. 2012), *cert. denied*, 569 U.S. 942 (2013).  And although executive agreements—such as the Agreement in this case—are "not

quite treaties," they do "carry the force of law as an exercise of the President's foreign policy powers." *Owner-Operator Indep. Drivers Ass'n v. Dep't of Transp.*, 724 F.3d 230, 232 (D.C. Cir. 2013).  Plaintiff contends that the Agreement is "not a law," but she cites no legal authority nor provides and reasoning in support of this argument.  *See* Pl.'s Opp'n at 3.

"Whether and to what extent a particular statute precludes judicial review is determined not only from its express language," *Block v. Comty. Nutrition Inst.*, 467 U.S. 340, 345 (1984), but also from "its structure, objectives, history, and the nature of the agency action involved." *Schieber*, 2022 WL 227082, at *8.  The Court finds that the Agreement precludes judicial review of Plaintiff's claim under § 701(a)(1).   In summary terms, Plaintiff claims that the State Department incorrectly interpreted the Agreement, resulting in the denial of her claim for compensation.  *See* Am. Compl. ¶¶ 18, 19.  But the Agreement provides an exclusive method for resolving any disputes arising from it: by "consultation" between the United States and France. Agreement § 8.  "That consultation-only provision operates as law precluding judicial review." *Schieber*, 2022 WL 227082, at *8 (citing *Moloney*, 685 F.3d at 13–14).  In response, Plaintiff contends that her claim focuses on the allegedly incorrect rejection of her claim by the State Department and "has nothing to do with the terms of the Agreement" itself.  Pl.'s Opp'n at 6.  But, as the Court previously noted, her claims plainly pertain to the "interpretation" of the Agreement— and any disagreement about such "interpretation" must "be resolved" exclusively by "consultation" between the United States and France.  The Agreement precludes judicial review in this case.

\*\*\*

Because the Court concludes that the Agreement provides no private cause of action and, even if does, its exclusive "consultation" provision precludes judicial review, Plaintiff's Complaint

fails to state a claim upon which relief may be granted and dismissal under Rule 12(b)(6) is appropriate.   The Court, therefore, does not address the United States' final argument that eligibility determinations for compensation are committed to agency discretion by law.  *See* Def.'s Mot. at 13–16.  Moreover, a plaintiff who fails to allege a "cognizable cause of action" has "no basis upon which to seek declaratory relief" because of the "well-established rule that the Declaratory Judgment Act is not an independent source of federal jurisdiction."  *Ali v. Rumsfeld*, 649 F.3d 762, 778 (D.C. Cir. 2011) (internal citation and quotation marks omitted).  Accordingly, without a viable APA claim, Plaintiff also cannot state a claim for relief under the Declaratory Judgment Act.

## IV.    CONCLUSION

For the foregoing reasons, the Court **GRANTS** the United States' Motion to Dismiss the Amended Complaint.  An appropriate Order accompanies this Memorandum Opinion.


_____/s/_____
COLLEEN KOLLAR-KOTELLY
UNITED STATES DISTRICT JUDGE

Date: March 10, 2022